NOONAN, Circuit Judge:
We must decide whether an incumbent local exchange carrier’s challenge to nominally “interim” rates for access to its network by competitive local exchange carriers, which rates are set by a state utilities commission pursuant to the Telecommunications Act of 1996, is ripe for judicial review, even though such rates are subject to later adjustment by the state utilities commission (“a true-up”). When the incumbent local exchange carrier has cognizable claims which cannot and will not be compensated by the true-up, we hold such challenge is ripe for judicial review.
BACKGROUND
The Telecommunications Act of 1996 (“the Act”), Pub.L. No. 104-104, 110 Stat. 56 (codified as amended in scattered sections of 47 U.S.C.) aims in part to introduce competition among local exchange carriers. Verizon Communs., Inc. v. FCC, 535 U.S. 467, 476-77, 122 S.Ct. 1646, 152 L.Ed.2d 701 (2002). A “local exchange” is “a network connecting terminals like telephones, faxes, and modems to other terminals within a geographical area like a city.” 535 U.S. at 489, 122 S.Ct. 1646. The Act recognizes two types of local exchange carriers. An “incumbent local exchange carrier” (“ILEC”) is a carrier that owns a local exchange. Id. at 490, 122 S.Ct. 1646 (citing 47 U.S.C. § 251(h)). A “competitive local exchange carrier” (“CLEC”) is a carrier new to the market, without a local exchange of its own. See 535 U.S. at 491-92, 122 S.Ct. 1646. Absent regulation, “[a] newcomer could not compete with the incumbent carrier to provide local service *1071 without coming close to replicating the incumbent’s entire existing network [or local exchange]... Id. at 490, 122 S.Ct. 1646.
To foster competition, the Act requires that ILECs make available to CLECs “access” to the ILECs’ “network elements” “on an unbundled basis.” 47 U.S.C. § 251(c)(3). A “network element” is “a facility or equipment used in the provision of a telecommunications service” - or those “features, functions, and capabilities that are provided by means of such facility or equipment, including subscriber numbers, databases, signaling systems, and information sufficient for billing and collection or used in the transmission, routing, or other provision of a telecommunications service.” 47 U.S.C. § 153(29). To provide “access” to a network element “on an unbundled basis” — or, said differently, to provide access to unbundled network elements (“UNEs”)' — '“is to lease the element, however described, to a requesting carrier at a stated price specific to that element” without requiring that other elements also be leased (“bundled”). See Verizon Communs., Inc., 535 U.S. at 531, 122 S.Ct. 1646.
Pursuant to the Act, CLECs requesting access to UNEs are first to attempt to negotiate rates for such access with the ILEC that owns the network. 47 U.S.C. §§ 251(c)(1), 252(a)(1). If the parties successfully negotiate rates, the relevant state utilities commission is required to accept those rates unless they discriminate against a carrier not a party to the contract, or the rates are otherwise shown to be contrary to the public interest. 47 U.S.C. §§ 252(e)(1), (e)(2)(A). If the parties cannot agree on rates, any party to the negotiations may request arbitration to be conducted by the relevant state utilities commission. 47 U.S.C. § 252(b)(1).
The Act assumes that a state utilities commission may refuse or otherwise fail to conduct the arbitration, in which case the Act provides that the Federal Communications Commission (“FCC”) shall act in the place and stead of the state utilities commission. See 4H U.S.C. § 252(e)(5). However, where, as here, the state utilities commission conducts the arbitration, such commission is bound by the Act’s provisions governing how the rates must be set and by the FCC’s related regulations, 47 U.S.C. § 252(c)(1)-(2), including regulations that require state utilities commissions to use the total element long run incremental cost (“TELRIC”) methodology. 47 C.F.R. § 51.505; see also AT & T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 385, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999) (upholding the FCC’s jurisdiction to design a pricing methodology to bind state utilities commissions); Verizon Communs., Inc., 535 U.S. at 497-528, 122 S.Ct. 1646 (upholding the TELRIC regulations in particular). It is important to note that, in setting forth these requirements, neither the Act nor .the FCC regulations distinguishes between “interim” rates and “final” rates. Cf. AT & T Communs. of Ill., Inc. v. Ill. Bell Tel. Co., 349 F.3d 402, 411 (7th Cir.2003) (“[T]he possibility of repair in the future is no warrant for promulgating today a rate that deviates from the TELRIC standard. Federal law requires that any rate for unbundled network elements, adopted by a state commission, comply with TELRIC when adopted.”) (emphasis added).
In 1997, the California Public Utilities Commission (“CPUC”) established nominally interim rates for access by CLECs to Verizon’s UNEs. We characterize these rates as interim only in name because, for reasons not relevant here, the CPUC did not undertake the task of setting permanent rates until 2002. Even then, it did not set permanent rates, but rather held expedited proceedings to establish revised interim rates, which were to remain in effect until permanent rates could be es *1072 tablished., After receiving several interim rate proposals from Verizon and interested CLECs, the CPUC issued the interim rate order that is at issue in this appeal. 2003 WL 1560216, 2003 Cal. PUC LEXIS 168 (Cal.Pub.Util. Mar. 13, 2003). In brief, the revised interim rates were based on rates approved by the utilities commission in New Jersey, where Verizon also is the ILEC; the rates were adjusted in an effort to reflect Verizon’s higher costs in California relative to New Jersey. Id. 2003 WL 1560216, 2003 Cal. PUC LEXIS 168, at *109-10. Verizon alleges both that the methodology used to set the New Jersey rates does not comply with TELRIC as previously interpreted both, by the FCC and CPUC, Compl. ¶¶ 36, 39, 42, and that “costs, network requirements, geography, demand levels, and other unique features [relevant to the setting of rates] may differ significantly by state.... ” Verizon Compl. ¶¶ 35, 42-43. However, in an attempt to remedy these admitted problems, the CPUC made the interim rates subject to a “true-up” when the permanent rates finally were adopted. 2003 WL 1560216, 2003 Cal. PUC LEXIS at *110. A “true-up” is a determination by the CPUC which adjusts the interim rates, either up or down, as of the earlier effective date of the interim rate order, so that the adjusted interim rates equal the permanent rates as set later in the permanent rate proceeding.
The impact of the interim rate order entered March 13, 2003 was immediately to reduce the rates that Verizon could charge CLECs for access to its UNEs relative to what it had been able to charge under the earlier rate order. After the CPUC denied Verizon’s application for rehearing, Verizon brought an action in federal district court against Michael R. Pee-vey and other commissioners of the-CPUC in their official capacities, in which Verizon alleged five claims: (1) that the interim rate order was arbitrary and capricious and not supported by substantial evidence; (2) that the interim rate order was not in compliance with the Act nor with the regulations implementing the TELRIC methodology; (3) that the interim rate order was confiscatory; (4) that the interim rate order was in violation of due process; and (5) that the interim rate order was in violation of Verizon’s civil rights. Verizon sought to have the interim rate order declared unlawful and vacated, to have its enforcement enjoined, and to have the matter returned to the CPUC for further proceedings. Verizon also sought its costs and attorneys’ fees incurred in litigating the suit.
AT & T Communications of California, Inc., MCI WorldCom Communications, Inc., and MCIMetro Access Transmission Services LLC intervened in the suit, after which Verizon filed a motion for partial summary judgment as to its first, second and fourth claims. However, concluding that Verizon’s first and second claims were not ripe for judicial review, the district court denied Verizon’s motion for partial summary judgment as to those two claims without reaching their merits, and sua sponte dismissed the same two claims. Then, after giving Verizon an opportunity to offer some material basis upon which to distinguish its remaining three claims, the district court dismissed those claims also for lack of ripeness. Verizon appealed the dismissal of its complaint. We have jurisdiction pursuant to 47 U.S.C. § 252(e)(6) and 28 U.S.C. § 1291, and vacate and remand with instructions that the district court consider on the merits whether Verizon is entitled to the declaratory and in-junctive relief.
STANDARD OF REVIEW
We review de novo whether claims are ripe for judicial review. Laub v. United States Dep’t of the Interior, 342 F.3d 1080, 1084 (9th Cir.2003).
*1073 ANALYSIS
The Telecommunications Act of 1996 provides a single methodology for the setting of rates: TELRIC. “Federal law requires that any rate for unbundled network elements, adopted by a state commission, comply with TELRIC when adopted.” AT & T Communs., 349 F.3d at 411. No provision is made by this law for any rate to be established in a different way. Verizon alleged that the CPUC had failed to comply. The issue was ready for judicial decision.
This obvious result has been clouded by our decision in US West Communs. v. MFS Intelenet, Inc., 193 F.3d 1112 (9th Cir.1999), understandably treated as precedent by the district court. In US West the contention was made and accepted by both parties that the rates were “interim only and may be adjusted by later pricing proceedings.” Id. at 1118. But neither the legitimacy of interim rates nor possible adjustment by later pricing proceedings (a so-called true-up) is accepted by Verizon. As neither interim rates nor a true-up compensating for such costs as credit insurance are covered by TELRIC, we see no reason to import into this case the assumptions and admissions that were decisive in US West.
Verizon has presented a straightforward challenge to the basis on which the CPUC set the current rates; namely the rates set in New Jersey, with alleged inadequate adjustment for Verizon’s costs in California. Whether this short cut complied with federal law and the constitution is ripe for adjudication.
Accordingly, the judgment of the district court is VACATED and the case is REMANDED.